QUNITED STATES DISTRICT COURT<br>
FOR THE WESTERN DISTRICT OF MICHIGAN<br>
NORTHERN DIVISION

UNITED STATES OF AMERICA,
       Plaintiff,

v.                                                    Case No. 2:15-CR-14
                                                        HON. TIMOTHY P. GREELEY
                                                        HON. ROBERT H. BELL

RAYMOND VALENTINO BOWSER,
       Defendant.
_____/

## REPORT AND RECOMMENDATION

Defendant is charged with one count of distribution of heroin within 1,000' of a playground on February 20, 2015; one count of distribution of heroin on April 17, 2015; and one count of possession of heroin with intent to distribute within 1,000' of a playground on April 17, 2015. Defendant requests an evidentiary hearing based on his Motion to Suppress evidence obtained pursuant to a search warrant, maintaining that the search warrant was not supported by probable cause. Docket # 17. The government argues that Defendant has not met the *Franks* hearing requirements, and thus is not entitled to an evidentiary hearing. Docket # 23. A hearing was held before this Court on October 28, 2015, to determine whether a *Franks* hearing is necessary.

A search warrant for Defendant's residence was issued on April 17, 2015, and a search was conducted on the residence the next day. Police seized drugs, money, communication devices, a scale, and computer devices from Defendant's residence. Defendant contends that because probable cause for issuance of the search warrant was established by false and omitted statements, the evidence collected as a result of the warrant should be suppressed.

The affidavit to obtain the search warrant was prepared on April 17, 2015, by

Officer Matthew Sterbenz of the City of Ironwood Public Safety department. In the affidavit, Officer Sterbenz requested permission to search a residence believed to be owned or occupied by Defendant, as well as the attached property and any vehicles on the premises. The affidavit contained statements pertaining to controlled buys on both February 20, 2015, and April 17, 2015. Defendant disputes the Affiant's written explanation of the events on April 17, 2015. Officer Sterbenz included the following information relating to that second controlled buy in his affidavit:

> On 4-17-2015 CI 15-01 contacted Affiant and advised that he/she recently spoke to Raymond and he advised he had some heroin that he would sell CI 15-01.
>
> Affiant and additional officers from the GIANT Narcotics team met CI 15-01. Affiant and additional officers search[ed] CI 15-01 along with CI 15-01's vehicle and determined that there were no controlled substances, money or contraband located. CI 15-01 was then provided with photocopied money to use in the controlled buy. Affiant CI 15-01 [sic] then followed CI 15-01 to the area CI 15-01 was to meet Raymond Vick Bowser.
>
> Officers conducted surveillance & observed an African American male exit 404 E. Iron St. that CI 15-01 later identified as Raymond Bowser. Affiant also observed the African American male which appeared to be the male that had been identified as Raymond Vick Bowser. Affiant and officers took turns doing surveillance throughout the controlled buy. When the controlled buy was complete[,] officers then observed that same African American male return to the [redacted] residence.
>
> Affiant and additional officer[s] meet CI 15-01 where [A]ffiant gave a statement on the events that occurred. CI 15-01 advised that contact was made with Raymond. CI 15-01 advised he/she made contact with Raymond and CI 15-01 gave the money provided to Raymond and he then handed over heroin to the CI. CI 15-01 confirmed the details of the controlled transaction and provided the verbal statement taken by Affiant. The Heroin that was purchased was field tested by Detective Sergeant Cruz and tested positive for Heroin.

Docket # 17-2 at 3-4. Defendant maintains that the description of the controlled buy on April 17, 2015, omits evidence that would refute the Magistrate Judge's probable cause finding. The government contends that Defendant has not met his burden under *Franks* to undergo an evidentiary hearing on the issue because Defendant has not shown that the assertions within the affidavit are not truthful.

Under *Franks v. Delaware*, 438 U.S. 154 (1978), a defendant *may* be entitled to an evidentiary hearing to determine whether or not probable cause to issue a search warrant exists, if the probable cause rests on the credibility or truthfulness of statements made in an affidavit. During a *Franks* hearing, the defendant may challenge the truthfulness of the statements in the affidavit, but for the hearing to be granted, the defendant must make a preliminary showing that the assertions challenged are not truthful. The *Franks* court set out the basic evidentiary burden as follows:

> To mandate an evidentiary hearing, the challenger's attack must be more than conclusory and must be supported by more than a mere desire to cross-examine. There must be allegations of deliberate falsehood or of reckless disregard for the truth, and those allegations must be accompanied by an offer of proof. They should point out specifically the portion of the warrant affidavit that is claimed to be false; and they should be accompanied by a statement of supporting reasons. Affidavits or sworn or otherwise reliable statements of witnesses should be furnished, or their absence satisfactorily explained. Allegations of negligence or innocent mistake are insufficient. The deliberate falsity or reckless disregard whose impeachment is permitted today is only that of the affiant, not of any nongovernmental informant. Finally, if these requirements are met, and if, when material that is the subject of the alleged falsity or reckless disregard is set to one side, there remains sufficient content in the warrant affidavit to support a finding of probable cause, no hearing is required  On the other  hand, if the remaining content is insufficient, the defendant is entitled, under the Fourth and Fourteenth Amendments, to his hearing.

*Id.* at 171-72.

The Sixth Circuit summarized the burden that *Franks* requires of a defendant in order to justify an evidentiary hearing as a two-step test:

> However, under *Franks* the defendant is entitled to an evidentiary hearing on the veracity of the statements in the affidavit "if and only if (1) there is a substantial preliminary showing that specified portions of the affiant's averments are deliberately or recklessly false and (2) a finding of probable cause would not be supported by the remaining content of the affidavit when the allegedly false material is set to one side". *United States v. Campbell*, 878 F.2d 170, 171 (6th Cir. 1989), *cert. denied* 493 U.S. 894 (1989).

*United States v. Atkin*, 107 F.3d 1213, 1216-17 (6th Cir. 1997).  Thus, a hearing should be granted if the defendant can show that, but for the deliberately or recklessly false statements in the affidavit, probable cause to issue the search warrant does not exist.  As noted in *Franks*, this substantial initial burden on the defendant is to prevent defendants from abusing the hearing process and to weed out frivolous claims early in the proceedings.  *Franks*, 438 U.S. at 170.

When a defendant seeks a *Franks* hearing on the basis of an omission that gives a statement the appearance of truthfulness, the Sixth Circuit has raised the evidentiary bar that the defendant must clear to obtain a hearing.  *United States v. Fowler*, 535 F.3d 408 (6th Cir. 2008). In *Fowler*, the court explained:

> Allegations of material omission are held to a higher standard because of the "potential for endless rounds of *Franks* hearings" due to potentially "endless conjecture about investigative leads, fragments of information, or other matter that might, if included, have redounded to defendant's benefit." *United States v. Martin*, 920 F.2d 393, 398 (6th Cir. 1990) (*quoting United States v. Colkley*, 899 F.2d 297, 301 (4th Cir. 1990)).

*Id.* at 415-16.  The reasoning for such a strict rule was explained by the Sixth Circuit in *Mays v.*

*City of Dayton*, 134 F.3d 809 (6th Cir. 1998):

> Affidavits in support of search warrants "are normally drafted by non-lawyers in the midst and haste of a criminal investigation." *United States v. Ventresca*, 380 U.S. 102, 108 (1965). An affiant cannot be expected to include in an affidavit every piece of information gathered in the course of an investigation. *United States v. Colkley*, 899 F.2d 297, 302 (4th Cir. 1990).

*Id.* at 815. Thus, the standard for omissions in regard to a *Franks* hearing is:

> [T]he defendant is entitled to a hearing if and only if: (1) the defendant makes a substantial preliminary showing that the affiant engaged in deliberate falsehood or reckless disregard for the truth **in omitting information from the affidavit**, and (2) a finding of probable cause would not be supported by the affidavit if the omitted material **were considered to be part of [the affidavit].**

*Fowler*, 535 F.3d at 415 (citing *Atkin*, 107 F.3d at 1216-17); *United States v. Rigaud*, 724 F. Supp. 2d 223, 230 (D. Mass. 2010) (noting that the alleged omissions were added into the affidavit to determine whether probable cause to issue the search warrant still existed).

Here, Defendant has not made the initial showing required to necessitate a *Franks* hearing. In regard to the first prong (requiring a substantial preliminary showing that portions of the Affiant's statements are deliberately or recklessly false), Defendant makes two arguments. First, Defendant claims that Officer Sterbenz lied when he called the April 17th drug deal a "controlled buy." Second, Defendant claims that Officer Sterbenz omitted material information pertaining to the April 17th drug deal that would make Officer Sterbenz's representation in his affidavit of the events on that day untruthful.

In regard to Defendant's first argument, Defendant stated that the April 17th drug deal cannot be called "controlled" in light of the omitted information, and that by labeling it as such, Officer Sterbenz deliberately or recklessly misrepresented the events that occurred on April

17, 2015, in his affidavit. At his hearing, Defendant defined a "controlled buy" as being a situation that occurs when an officer searches a confidential informant's person, car, and a location before and after a pre-planned drug deal; then, the officer provides the CI with pre-recorded money to engage in the planned drug deal; and finally, the CI conducts the drug deal while the officer observes the CI wherever he or she goes during the deal. Defendant has neither provided any authority to support this definition, nor has Defendant shown that any reference to a drug deal that did not follow this scenario would be a false misrepresentation. While this definition exemplifies an ideal controlled buy, courts have allowed drug deals that proceed imperfectly to still be labeled "controlled buys." *See, e.g., United States v. Robinson*, 272 Fed. App'x 421, 426 (6th Cir. 2007) (noting that when money provided to a CI was not pre-recorded, the buy was still a "controlled buy"); *United States v. Rivera*, 410 F.3d 998, 1001 (8th Cir. 2005) (noting that a drug deal was "controlled" even when the affidavit did not expressly state that the officer was present during the buy); *Rigaud*, 724 F. Supp. 2d at 229-30 (noting that when a CI bought drugs for law enforcement *and* drugs for herself during a "controlled buy," the buy was still "controlled").

Moreover, the government stated that the statements in the affidavit relating to the April 17th drug deal were still truthful, despite potentially being mislabeled as a "controlled buy." The government's logic is that regardless of how the drug deal from April 17th is labeled, the facts still show that some sort of drug deal occurred that day. Therefore, regardless of whether or not it was proper for Officer Sterbenz to reference the April 17th drug deal as a "controlled buy" does not change the fact that a deal occurred. Consequently, Defendant has not shown how potentially mislabeling a drug deal a "controlled buy" would render the facts relating

to the drug deal untruthful. As such, Defendant has not met the first prong required to hold a *Franks* hearing.

Defendant's next argument avers that Officer Sterbenz lied in his affidavit when he deliberately or recklessly omitted material information about the drug deal from April 17, 2015. *Atkin*, 107 F.3d at 1216-17. Defendant pointed to four events that were missing from Officer Sterbenz's affidavit, that were included in his report[1]: (1) the April 17, 2015, controlled buy was premised on Defendant providing the CI with heroin in exchange for money *and* marijuana; (2) police instructed the CI not to provide Defendant with marijuana, and instead hand him only the controlled buy money; (3) during the controlled buy, the CI drove to his home, went inside for about a minute while Defendant remained in the car, returned to the vehicle with Defendant, and drove back to Defendant's residence; and (4) the CI told officers after the controlled buy that the CI had gone to his home to provide Defendant with marijuana. Docket # 18 at 7-8; Docket # 18-3 at 2-3. Defendant claims that Officer Sterbenz's omissions make his representation of the April 17th drug deal in his affidavit untruthful.

The government concedes that the above-mentioned information is missing from Officer Sterbenz's affidavit. Docket # 23 at 12. However, the government claims that rather than showing that Officer Sterbenz's representation of the April 17th drug deal was untrue, the omissions *corroborate* his statements by providing a more complete picture of the deal. *Id.* at 16-17. The Court agrees with the government and finds that the omitted information does not show that the officer's representations are false; in fact, the omissions support his representation

---

[1] Defendant has provided Officer Sterbenz's report, affidavit, the Search Warrant signed by Magistrate Judge Ahmen, and a redacted version of the CI's voluntary statement dated April 17, 2015 as offers of proof to support his claim. Docket ## 18-1; 18-2; 18-3; 18-4.

of the April 17th drug deal by filling in the gaps. As such, Defendant has not sufficiently shown that the omitted information proves that Officer Sterbenz's recitation of the April 17, 2015, drug deal in his affidavit was untruthful. Therefore, Defendant has not satisfied the first prong for a *Franks* hearing.

Even if Defendant had shown that the omitted information proves that labeling the drug deal a "controlled buy" was untruthful, or that Officer Sterbenz's representations in the affidavit were false, Defendant has not fulfilled the second requirement for a *Franks* hearing. In regard to the second prong (whether probable cause would be supported if the omitted information were part of the affidavit, or the falsehood was set aside), sufficient evidence to support a probable cause finding would still exist even if the term "controlled" was omitted in reference to the April 17th drug deal, or the omissions had been included in the affidavit. *Atkin*, 107 F.3d at 1216-17.

A judicial officer determines probable cause based upon the totality of the circumstances. *United States v. Hill*, 142 F.3d 305 (6th Cir. 1998) (citing *Illinois v. Gates*, 462 U.S. 213, 238 (1983)). "Probable cause requires only a probability or substantial chance of criminal activity." *Id.* The Sixth Circuit in *United States v. Woosley*, 361 F.3d 924, 926-27 (6th Cir. 2004), set forth the standard used in evaluating whether probable cause existed to support the authorization of a search warrant:

> This court reviews the sufficiency of an affidavit to determine "whether the magistrate had a substantial basis for finding that the affidavit established probable cause to believe that the evidence would be found at the place cited." *United States v. Davidson*, 936 F.2d 856, 859 (6th Cir. 1991) (quotation omitted). The affidavit should be reviewed in a commonsense - rather than a hypertechnical - manner, and the court should consider whether the totality of the

circumstances supports a finding of probable cause, rather than engaging in line-by-line scrutiny. *United States v. Greene*, 250 F.3d 471, 479 (6th Cir. 2001). The magistrate's determination of probable cause is afforded great deference, and that determination should be reversed only if the magistrate arbitrarily exercised his discretion. *Id.*

In *United States v. Allen*, 211 F.3d 970 (2000) (*en banc*), which is relied on by both Woosley and the Government, we held that where a known person, named to the magistrate, to whose reliability an officer attests with some detail, states that he has seen a particular crime and particular evidence, in the recent past, a neutral and detached magistrate may believe that evidence of a crime will be found. *Id.* at 976 (emphasis omitted). In concluding that independent police corroboration of the information provided was unnecessary in such cases, we emphasized that probable cause determinations must be based on the totality of the circumstances and cautioned against a continuing reliance on formalistic "tests" that required the satisfaction of particular elements to support a finding of probable cause. *Id.* at 975-76. Consequently, an affidavit including a tip from an informant that has been proven to be reliable may support a finding of probable cause in the absence of any corroboration. *See Id.* at 976; *United States v. Smith*, 182 F.3d 473, 478-79 (6th Cir. 1999). Alternatively, an affidavit that supplies little information concerning an informant's reliability may support a finding of probable cause, under the totality of the circumstances, if it includes sufficient corroborating information. *See Illinois v. Gates*, 462 U.S. 213, 241-45, 103 S.Ct. 2317, 76 L.Ed.2d 527 (1983); *United States v. Tuttle*, 200 F.3d 892, 894 (6th Cir. 2000) ("[I]nformation received from an informant whose reliability is not established may be sufficient to create probable cause when there is some independent corroboration by the police of the informant's information.").

A probable cause review of an affidavit supporting a search warrant is limited to the information presented in the four corners of the affidavit. *United States v. Coffee*, 434 F.3d 887, 892 (6th Cir. 2006).

Here, if the term "controlled" was omitted from the affidavit in reference to the April 17, 2015, drug deal, there would still be probable cause to issue a search warrant. Calling the April 17th drug deal a "controlled buy" rather than a buy in general was not material to the

magistrate judge's probable cause finding. Many other details contributed to the magistrate's probable cause determination aside from referencing the April 17th drug deal a "controlled buy." For example, the CI was searched before and after the deal, the CI was provided pre-recorded money before the deal, the CI was seen with the same person (Defendant) as he was during the first deal in February, and the CI had informed officers earlier that day that he spoke to Defendant and Defendant wanted to sell him heroin. Therefore, under a "totality of a circumstances" view, the affidavit supplied "adequate supporting facts to constitute a substantial basis for concluding there was a fair probability that evidence of a criminal activity would be found at [defendant's residence]" even if the word "controlled" was stricken in reference to the April 17th deal. *United States v. Robinson*, 352 Fed. App'x 27, 34 (6th Cir. 2009) (noting the determination of probable cause did not change even though the buys were not "controlled"). Thus, Defendant has not shown that striking the term "controlled" would make the affidavit suddenly lack probable cause to issue a search warrant. As such, Defendant has not satisfied the second prong for holding a *Franks* hearing.

Moreover, even if the above-mentioned omissions were included in Officer Sterbenz's affidavit, the affidavit would still contain facts to support a finding of probable cause. In fact, a probable cause finding would be even more evident if the omissions were included in the affidavit. *Gates*, 462 U.S. at 218 (stating a probable cause finding requires only a "fair probability that contraband or evidence of a crime will be found in a particular place."). If the omissions had been included, the magistrate judge would have known that: (1) the CI spoke with Defendant earlier on April 17th, and was told that Defendant would sell the CI heroin that day, (2) officers searched the CI and the CI's vehicle before the buy to ensure no controlled

substances were present in the vehicle, (3) the CI met with Defendant at Defendant's residence and was provided heroin, and (4) the CI provided heroin to law enforcement immediately after the drug deal.[2]  *United States v. Hawkins*, 278 Fed. App'x 629, 634 (6th Cir. 2008) (quoting *Gates*, 462 U.S. at 218 ("A judge presented with a request for a search warrant must consider the totality of the circumstances, not individual pieces of evidence in isolation, and make a 'practical, commonsense' determination whether probable cause exists.")). Clearly, the omissions provide a more detailed account of the April 17th drug deal and make it even more likely that evidence of a crime would be found at Defendant's residence.  Therefore, because Defendant has not shown how including the omissions would negate a finding of probable cause, Defendant has not satisfied the second prong required for holding a *Franks* hearing.

Defendant's final argument relating to the second *Franks* prong is that probable cause to search 404 E. Iron Street does not exist when the omissions are added to the affidavit because there is no evidence linking Defendant's criminal activity to that residence. A search warrant affidavit must contain evidence that connects a crime to a residence in a way that is not so vague that it is conclusory or meaningless. *United States v. Carpentar*, 360 F.3d 591, 595-96 (6th Cir. 2004) (noting the affidavit must "provide the required nexus between the residence and the illegal activity").  The evidence connecting a known drug dealer's criminal activity to a residence must be reliable.  *United States v. Gunter*, 266 Fed. App'x 415, 419 (6th Cir. 2008) (emphasis added) (noting that uncorroborated statements by a CI would not be reliable).  The critical inquiry is whether "there is reasonable cause to believe that the specific 'things' to be searched for and seized are located on the property to which entry is sought." *United States v.*

---

[2] The question of who actually supplied the heroin that day (Defendant or the CI) is a fact question for trial.

*Savoca*, 761 F.2d 292, 297 (6th Cir. 1985) (quoting *Zurcher v. Stanford Daily*, 436 U.S. 547, 556 (1978)).

Here, the omissions and uncontested portions of the affidavit sufficiently connect Defendant's criminal activity to 404 E. Iron Street. For example, the CI informed officers on January 30, 2015, that Defendant had been conducting drug deals in the area, and that he had been living with his girlfriend in Bessemer, Michigan. Docket # 17-2 at 2. In addition, the omitted statements and affidavit contain information showing that the CI met with Defendant twice at the 404 E. Iron Street residence so that the CI could purchase heroin from Defendant. During both buys, officers saw Defendant leaving 404 E. Iron Street (upon the CI's arrival at that location), providing illegal substances to the CI in exchange for money, and then returning to that same residence. Docket # 17-2 at 3-4; Docket # 18-3 at 2-3. Moreover, the affidavit states that the GIANT Narcotics team conducted surveillance on the 404 E. Iron Street residence after the second controlled buy and noted that Defendant had not left the residence at any point during that time. Docket # 17-2 at 4. Thus, the omissions and undisputed portions of the affidavit provide more than a conclusory connection between the Defendant's criminal activity and the 404 E. Iron Street residence. *Carpentar*, 360 F.3d at 595-96. As a result, Defendant has not shown that the omissions negate a finding of probable cause, meaning Defendant has not satisfied the second prong required for a *Franks* hearing.

Overall, regardless of whether the term "controlled" was omitted in reference to the April 17th drug deal, or the omissions were included in the search warrant affidavit, the affidavit would still support a finding of probable cause. Accordingly, it is respectfully recommended that Defendant's Motion to Suppress be **DENIED**. Docket # 17.

NOTICE TO PARTIES:  Objections to this Report and Recommendation must be served on opposing parties and filed with the Clerk of the Court within 14 days of receipt of this Report and Recommendation.  28 U.S.C. § 636(b)(1)(C); Fed. R. Civ. P. 72(b); W.D. Mich. LCivR 72.3.  Failure to file timely objections constitutes a waiver of any further right to appeal. *United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985).

Dated:  11/13/2015                         /s/ *Timothy P. Greeley*
                                          TIMOTHY P. GREELEY
                                          UNITED STATES MAGISTRATE JUDGE